1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  MEDICAL INSTRUMENT DEVELOPMENT          No. C -05-1138 MJJ
    LABORATORIES,
11                                          **ORDER GRANTING IN PART AND**
                    Plaintiff,              **DENYING IN PART DEFENDANT'S**
12                                          **MOTION TO DISMISS**

13        v.

14  ALCON LABORATORIES,

15                  Defendants.
                                        /
16

17                            **INTRODUCTION**

18        Before the Court is Defendant Alcon Laboratories' ("Defendant" or "Alcon") Rule 12(b)(6)

19  Motion to Dismiss, or in the alternative, Rule 12(e) Motion for a More Definite Statement

20  ("Motion").  For the following reasons, the Court **GRANTS** Defendant's Motion without prejudice.

21                         **FACTUAL BACKGROUND**

22        Defendant Alcon is a leading pharmaceutical company specializing in researching,

23  developing, manufacturing, and marketing ophthalmic surgical, vision care, and optical products.[1]

24  Part of Alcon's business is to develop and sell surgical devices for use in the treatment of ocular

25  diseases.  Defendant Alcon asserts that for the past three decades, it has been in the process of

26  developing and improving a virectomy probe used in surgical procedures to treat retinal disorders,

27  but as of 2000 it had yet to develop an adequate probe.  Plaintiff Medical Instrument Development

28  Laboratories ("Plaintiff" or "MID Labs") is a California corporation which develops and

_____

[1] The facts are derived from Alcon's Motion and MID Labs' Complaint.

manufactures medical instruments for use in vitreoretinal (ophthalmic) surgery, including a product known as a High Speed Single Use Virectomy Probe (the "Probe").  MID Labs was founded by Dr. Carl Wang ("Wang") in 1981, and the company was subsequently purchased by Alcon in 1985. After the purchase, Wang re-started his own business, which he again named MID Labs.

On or about October 12, 2000, MID Labs and Alcon entered into a contract entitled Release and Supply Agreement (the "Agreement").  Seven provisions of the Agreement are relevant for purposes of resolving the instant motion.  Section 3.01 of the Agreement states, "[s]ubject to its rights to self-manufacture the Products pursuant to section 4.05 Alcon agrees that it will purchase its requirements of the Products from MID Labs and will not have the right to make or have made the Products." (Complaint ("Comp."), Ex. A at § 3.01.)  Section 4.01 of the Agreement states that "[n]othing in this Agreement shall be construed to require Alcon to purchase any minimum quantities of Products from MID Labs."  (*Id*. at § 4.01.)  Section 4.05 of the Agreement states that "[i]n the event that MID Labs fails to either (i) provide Alcon with Products meeting the Specifications in the quantities requested by Alcon pursuant to section 4.03 [] or (ii) maintain the Quality Standards for all of the Products pursuant to section 4.04 [], then Alcon may, at its option, give MID Labs written notice of such non-performance . . . Alcon shall have the right to terminate this Agreement and/or it or its Affiliate shall have the right to self manufacture the Products."  (*Id*. at § 4.05.)  Section 4.06 of the Agreement states that "Alcon will have the right to acquire from any third party or internally develop similar technology or products which may compete against or replace any of MID Labs Products."  (*Id*. at § 4.06.)  Section 7.01 of the Agreement states that "the party receiving . . . confidential information shall not make use of said confidential information, except for purposes authorized by this Agreement."  (*Id*. at § 7.01.)  Section 8.02(c) of the Agreement states that the Agreement may be terminated by "Alcon at any time without cause or for any reason by providing MID Labs with thirty (30) days prior written notice[.]"  (*Id*. at § 8.01(c).) Finally, section 12.07 of the Agreement states that the "Agreement is to be performed in accordance with the laws of the State of Texas and shall be construed and enforced in accordance with the laws of the State of Texas."  (*Id*. at § 12.07.)

Approximately a year after the Agreement was entered into and continuing through March

1    2002, Alcon representatives requested assurances that MID Labs would be able to meet the

2    technological requirements of a high volume purchase order of Probes.  Subsequently, Alcon and its

3    engineers were granted access to MID Labs' facility in order to inspect and audit MID Labs'

4    development, manufacturing, and testing processes for the Probes.  Sometime during this inspection

5    period, the parties' relationship deteriorated.

6         Plaintiff MID Labs alleges that Defendant Alcon breached the Agreement and committed

7    various acts of fraud by developing its own probe and ceasing to purchase all of its needed Probes

8    from MID Labs.  Defendant Alcon argues, to the contrary, that the Agreement left it free and clear to

9    acquire Probes from any third party or to internally develop its own probe for manufacture and sale

10   at any time during the term of the Agreement and thereafter.  Plaintiff MID Labs filed a Complaint

11   on February 18, 2005, in the Superior Court of the State of California, Alameda County.  Plaintiff's

12   Complaint contains three state law causes of action:  (1) common law fraud and deceit; (2) breach of

13   contract; and (3) unfair business practices in violation of California Business and Professions Code

14   section 17200.  Defendant removed the case to this Court on diversity grounds.

15                                **LEGAL STANDARD**

16        A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the

17   complaint.  *See Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337 (9th Cir. 1996).  Dismissal of an

18   action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond [a] doubt that the

19   plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine*

20   *v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41,

21   45-6 (1957)).  In reviewing such a motion, the Court must assume all factual allegations to be true

22   and must construe them in the light most favorable to the nonmoving party.  *See North Star v.*

23   *Arizona Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983).  Therefore, the Court will dismiss the

24   complaint or any claim in it without leave to amend only if "it is absolutely clear that the

25   deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446,

26   1448 (9th Cir. 1987).

27   ///

28   ///

3

**ANALYSIS**

**I.     Choice of Law**

As an initial matter, the Court addresses the parties' disagreement regarding what state's substantive law applies to Plaintiff's claims.  The Agreement contains a choice of law provision specifying that the Agreement "shall be construed and enforced in accordance with the law of the State of Texas." (Comp., Ex. A at § 12.07.)  Defendant contends that pursuant to that provision, Texas law governs all claims arising out of the Agreement.  Thus, Defendant argues, Plaintiff's Second Cause of Action, brought under California Business & Professions Code, §§ 17200, *et seq.*, is not viable.  Plaintiff MID Labs argues that pursuant to section 12.07 of the Agreement, Texas law governs only as to "contract claims relating to performance and construction," and "does not speak to tort or statutory causes of action." (Opposition ("Opp.") at 4.)  Specifically, Plaintiff asserts that the Agreement's choice of law provision should apply neither to Plaintiff's tort claim for fraud and deceit, nor to its section 17200 claim, the first and third causes of action.

In suits based on diversity jurisdiction, district courts are to apply the choice of law principles of the forum state.  *Day & Zimmerman, Inc. v. Chaloner*, 423 U.S. 3, 4 (1975).  Since this lawsuit was brought in the Northern District of California, California law properly determines whether Texas law should control the present dispute.  Under California law, a choice of law clause agreed upon through arm's length negotiations by sophisticated commercial parties is generally enforced unless it is contrary to California public policy.  *Medimatch, Inc. v. Lucent Technologies, Inc.*, 120 F. Supp. 2d 842, 861-62 (N.D. Cal. 2000) (citation omitted).  However, the Ninth Circuit has held that "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision.  Rather they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citation omitted).

Here, Defendant has not established that the choice of law provision, as written, should apply to *all matters* arising out of the Agreement.[2]  Section 12.07 of the Agreement simply states that the

_____

[2] In support of its argument, Defendant relies on *Ribbens International, S.A. de C.V. v. Transport International Pool, Inc.*, for the proposition that a contractual choice of law provision should be applied "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice of law, or (b) application of the law of the

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1   "Agreement is to be performed in accordance with the laws of the State of Texas and shall be

2   *construed and enforced* with the laws of the State of Texas."  (Comp., Ex. A at § 12.07 (emphasis

3   added).)  While this statement establishes that Texas law will govern interpretation and construction

4   of the contract, the narrowly-worded choice of law provision does not explicitly control non-

5   contractual claims that are related to the contract.  *Thompson & Wallace of Memphis, Inc. v.*

6   *Falconwood Corp.*, 100 F.3d 429, 432-33 (5th Cir. 1996) (tort claims not governed by choice of law

7   clause providing that chosen law applied to the "agreement and its enforcement").  Therefore, the

8   Court finds that because Plaintiff's fraud and deceit claim and its section 17200 claim are non-

9   contractual "claims arising in tort," they are not contemplated by the Agreement's choice of law

10  provision and should be "decided according to the law of the forum state."  *Sutter*, 971 F.2d 407.

11  The Court also finds that the choice of law provision does not bar Plaintiff's section 17200 claim, a

12  claim brought under California law.  In sum, the Court finds that the First and Third Causes of

13  Action are governed by California law.  Only the breach of contract claim is governed by Texas law.

14  **II.      Motion to Dismiss**

15          **A.      First Cause of Action - Fraud and Deceit**

16          Plaintiff MID Labs claims that Defendant Alcon made false representations to Plaintiff in

17  order to induce disclosure of and obtain access to MID Labs' confidential and proprietary

18  information related to the development, testing, and manufacturing processes of its Probes.

19  Defendant alleges that Plaintiff's fraud claim should be dismissed because it has not been pled with

20  sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiff asserts that

21  Rule 9(b) is not applicable here because it applies only to federal claims.  Plaintiff contends that, in

22  any event, its Complaint adequately alleges the facts necessary to support a claim of fraud.  The

23  Court disagrees.

24          Under California law, there are four required elements of a fraud claim:  (1) a false promise

25  or representation as to a material fact; (2) knowledge of the falsity of the representation when made

27  chosen state would be contrary to the fundamental policy of the state which has materially greater
    interest than the chosen state[.]"  47 F. Supp. 2d 1117, 1120 (N.D. Cal. 2000).  *Ribbens* is not
    controlling, however, as the plaintiff's complaint in that case alleged only breach of contract.  Thus, the
28  *Ribbens'* court determination, as to the application of a choice of law provision, does not speak to tort
    and statutory causes of action alleged here.

5

United States District Court

For the Northern District of California

1    (or lack of reasonable ground to believe in its truth), or without any intention of performing or

2    fulfilling the promise; (3) an intent to deceive and to cause reliance at the time of the promise; and

3    (4) reliance thereon with resulting injury and damage.  *Sepra v. Jolly King Restaurants, Inc.*, 62

4    F.R.D. 626, 636 (S.D. Cal. 1974) (citation omitted).  Rule 9(b)'s requirement that fraud claims be

5    pled with particularity is satisfied when the complaint states the time, place, and nature of the

6    alleged fraudulent activities, and the identities of the parties alleged to have made the

7    misrepresentations.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

8    Cir. 1986) (citations omitted).

9          Even construing the Complaint in the light most favorable to Plaintiff, as the Court must, it is

10   apparent that Plaintiff has not met the requirements for a viable fraud claim under California law.

11   First, Plaintiff alleges that Alcon representatives falsely told MID Labs that it planned to purchase a

12   very high volume of MID Labs' Probes.  In addition, Plaintiff MID Labs alleges that Defendant

13   Alcon made these false representations with the purpose of gaining access to MID Labs' facilities

14   under the false pretense of inspection.  However, Plaintiff fails to allege any facts that, if proven,

15   show that at the time the representation was made, Alcon did not intend to place such an order.

16   Specifically, the point at which MID Labs claims it became aware of Alcon's allegedly false and

17   fraudulent representations, Alcon was still inspecting MID Labs' facilities.  Therefore, Defendant

18   Alcon could still have fulfilled the promises made by its representatives once it was assured that

19   MID Labs could handle the forecasted order.  Thus, the Complaint fails to allege a false or

20   misleading statement, or that Alcon's representatives knew their statements to be false at the time

21   they were made.

22         Second, Plaintiff alleges $24 million in damages, but fails to allege the specific purchase

23   order or any set of facts which, if proven, show that MID Labs would have received $24 million in

24   profits absent Alcon's alleged fraudulent misrepresentations.  Thus, the Complaint fails to allege an

25   injury or damages that directly resulted from Alcon's representations, and the Court finds that MID

26   Labs' Complaint fails to sufficiently plead a claim for fraud under California law.[3]  The Court

27

28         [3] Since Plaintiff fails to sufficiently plead a fraud claim under California law, it cannot meet the
     heightened pleading requirements of Rule 9(b).

1    **GRANTS** Alcon's Motion to Dismiss on the First Cause of Action without prejudice.

2          **B.**      **Third Cause of Action - Section 17200[4]**

3          Plaintiff MID Labs claims that Defendant Alcon's alleged fraudulent misrepresentations and

4    misappropriation of MID Labs' confidential and proprietary information are acts and practices that

5    violate California Business and Professions Code section 17200.  Defendant argues that MID Labs'

6    section 17200 cause of action is not viable because it is based on the insufficiently pled common law

7    claims of fraud and misappropriation.  Plaintiff disagrees.  Defendant further asserts that Plaintiff's

8    section 17200 cause of action is deficient because Plaintiff has not alleged in its Complaint that

9    members of the public are likely to be deceived by Defendant's allegedly fraudulent conduct.

10         Under section 17200, "unfair competition" is defined as "any unlawful, unfair or fraudulent

11   business act or practice."  This tripartite test is disjunctive and the plaintiff need only allege one of

12   the three theories to properly plead a claim under section 17200.  *Accuimage Diagnostics Corp. v.*

13   *Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003) (citation omitted).  As an initial matter,

14   the Court notes that MID Labs has not alleged a violation of section 17200 under the theory of

15   unfair business practices.  Thus, at issue is only whether MID Labs' cause of action may go forward

16   under the theories of fraudulent or unlawful business practices.  The Court addresses these

17   separately.

18         **1.**      **Fraudulent Business Practices**

19         Plaintiff asserts that the fraudulent business practices prong of section 17200 is established

20   by its common law claim for fraud.  The Court disagrees.  *Watson Laboratories, Inc. v. Rhone-*

21   *Poulenc Rorer, Inc.*, is instructive here.  178 F. Supp. 2d 1099 (C.D. Cal. 2001).  In *Watson*, a

22   pharmaceutical company sued its supplier under the fraudulent business practices theory of section

23   17200, arguing that it was deliberately misled by the defendant's statements about its supply

24   capabilities and its intent to resume supplying the pharmaceutical company with a hypertension

25   drug.  *Id*. at 1120.  The district court held that "it is necessary under the fraudulent prong to show

26   deception to some members of the public interest, and not merely to the direct competitor or other

27   non-consumer party to the contract."  *Id*. at 1121.  The court noted the absolute lack of case

28

      [4] Following the parties' lead, the Court addresses Plaintiff's three claims out of order.

1   authority establishing any principle that fraudulent business acts are "separately actionable by

2   business competitors absent a showing that the public, rather than merely the plaintiff, is likely to be

3   deceived." *Id*. The court held that the pharmaceutical company "is not a member of the public or a

4   consumer entitled to [section 17200] protection." *Id*.

5       Here, similarly, Plaintiff's Complaint alleges a violation of the fraudulent prong of section

6   17200 based on Defendant's alleged misrepresentation that it would purchase Probes from Plaintiff,

7   which allegedly resulted in Plaintiff suffering lost profits. However, as in *Watson*, Plaintiff fails to

8   allege in its Complaint that any "members of the public are likely to be deceived" by Defendant's

9   allegedly fraudulent conduct. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d

10  197, 211 (1983) (citation omitted). Furthermore, like the plaintiff in *Watson*, Plaintiff MID Labs is

11  Alcon's direct competitor or, at least, a non-consumer, and "is not a member of the public or a

12  consumer entitled to" protection under the fraudulent business practices theory of section 17200.

13  *Watson*, 178 F. Supp. 2d at 1120. Therefore, the Court finds that Plaintiff has not satisfied the

14  necessary elements of a fraudulent business practices theory of section 17200 claim.

15              **2.      Unlawful Business Practices**

16      A claim under the unlawful business practices theory of section 17200 includes "any

17  practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory,

18  or court-made." *Id*. (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 833 (1994)). Plaintiff

19  asserts that its unlawful business practices theory of section 17200 is established by an underlying

20  misappropriation claim. The parties dispute whether a common law claim can serve to undergird an

21  unlawful business practices theory of a section 17200 claim. However, the Court need not decide

22  that question at this juncture since Plaintiff has not adequately pled a claim for misappropriation

23  here. Plaintiff's Second Cause of Action, alleging breach of contract, vaguely alleges that Alcon

24  breached the parties' Agreement by using MID Labs' confidential information. This is not a claim

25  for unlawful misappropriation of trade secrets. Hence, the Court finds that Plaintiff's unlawful

26  business practices theory of its section 17200 claim is not rendered tenable by any misappropriation

27  claim.

28      The Court also notes that Plaintiff's First Cause of Action, alleging common law fraud,

*United States District Court*
For the Northern District of California

8

1    cannot support an unlawful business practices theory of its section 17200 claim because, as

2    discussed *supra*, the fraud claim is not adequately pled.

3        In sum, Plaintiff has failed to adequately plead either a fraudulent or unlawful business

4    practices theory of its section 17200 claim.  Therefore, the Court **GRANTS** Defendant's motion to

5    dismiss the Third Cause of Action, but **GRANTS** Plaintiff leave to amend.

6        **C.    Second Cause of Action - Breach of Contract**

7        Plaintiff alleges in its Second Cause of Action that Alcon breached the parties' Agreement in

8    three ways:  (1) by manufacturing high speed probes; (2) by misappropriating confidential

9    information; and (3) by ceasing to purchase all of its requirements for the Probes from MID Labs.

10   Alcon argues that Plaintiff's breach of contract claim fails because Plaintiff has not alleged conduct

11   constituting a breach of the parties' Agreement.  MID Labs disagrees.  At issue is the meaning of

12   certain provisions of the Agreement.

13        Whether a contract is ambiguous is a question of law.  *Coker v. Coker*, 650 S.W. 2d 391,

14   393-94 (Tex. 1983).[5]  When interpreting a contract, courts should "give effect to the written

15   expression of the parties' intent."  *AT&T Corp. and AT&T Communications of the Southwest, Inc. v.*

16   *Rylander*, 2 S.W. 3d 546, 559 (Tex. 1999) (citation omitted).  "To determine the parties' intent, the

17   courts must consider the entire writing in an effort to harmonize all of the provisions of the

18   instrument" so that none will be rendered meaningless.[6]  *Id*.  Mere disagreement over the meaning of

19   a provision in the contract does not necessarily mean that a term is ambiguous.  *Richardson Lifestyle*

20   *Ass'n v. Houston*, 853 S.W. 2d 796, 800 (Tex. App. 1993).  However, "a contract is ambiguous if its

21   meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."  *CMS*

22   *Partners, Ltd. v. Plumrose USA, Incorporated*, 101 S.W. 3d 730, 732 (Tex. App. 2003).  A court

23   must determine "whether there is more than one reasonable interpretation of this contract such that a

24   fact issue was created concerning the parties' intent."  *Columbia Gas Transmission Corp. v. New*

25   *Ulm Gas, Ltd.*, 940 S.W. 2d 587, 589 (Tex. 1999).

26

27        [5] The Court analyzes the viability of this claim pursuant to Texas law.

28        [6] "[T]he contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists[,]" but all other extrinsic evidence is inadmissible.  *AT&T*, 2 S.W. at 559 (citation omitted) (internal quotations omitted).

United States District Court

For the Northern District of California

9

1 | ///

2 | ### 1.    Alcon's Manufacture of the Probes

3 | Pointing to sections 3.01 and 4.05 of the Agreement, Plaintiff alleges that the Agreement

4 | specifically prevents Alcon from manufacturing MID Labs' probes except "[i]n the event that MID

5 | Labs fails to either (i) provide Alcon with Products meeting the Specifications in the quantities

6 | requested by Alcon . . . or (ii) maintain the quality and standards for all of the Products." (Comp.,

7 | Ex. A at § 3.01.)  Defendant Alcon points to section 4.06 of the Agreement, which expressly allows

8 | it to "acquire from any third party or internally develop similar technology or products which may

9 | compete against or replace any of MID Labs Products." (*Id* at § 4.06.)  At issue is the definition of

10 | "similar" used in section 4.06.  If "similar" products includes the "virtually identical" probes that

11 | Plaintiff alleges Alcon manufactured here, there is no breach of contract.  However, if the definition

12 | of "similar" does not incorporate the "virtually identical" probes produced by Alcon, Plaintiff has a

13 | breach of contract claim.  Both interpretations are reasonable and thus, there is ambiguity in the

14 | contract terms.  *See Columbia*, 940 S.W. 2d at 589.  Such ambiguity raises factual questions that are

15 | not properly decided in the 12(b)(6) context.  Accordingly, Defendant's Motion is **DENIED** on this

16 | ground.

17 | ### 2.    Misappropriation of Proprietary and Confidential Information

18 | Plaintiff claims that Alcon misappropriated MID Labs' confidential information to

19 | manufacture its own probe.  Defendant contends that its use of MID Labs' confidential information

20 | was not prohibited by the Agreement because section 3.01 granted it an exclusive license to "make,

21 | use, offer for sale, and sell any product in the Territory." (Comp., Ex. A at § 3.01.)  Plaintiff

22 | observes that section 3.01 of the Agreement does not expressly refer to the Probes at issue nor is

23 | "any product" capitalized (which, Plaintiff contends, would suggest the language was intended to

24 | refer to the Probes pursuant to section 1.01 of the Agreement).  Thus, Plaintiff argues that section

25 | 3.01 of the Agreement does not grant Alcon license to use MID Labs' confidential information (i.e.

26 | Probe schematics) to make its own Probes except pursuant to section 4.05 of the Agreement (when

27 | MID Labs fails to provide adequate probes).  According to Plaintiff, because section 3.01 does not

28 | apply here, section 7.01, which prohibits Alcon from using MID Labs' confidential information

United States District Court
For the Northern District of California

10

United States District Court

For the Northern District of California

1  except for purposes authorized by the Agreement, bars Alcon's use of MID Labs' schematics.

2       Plaintiff's argument is creative.  However, while it is a stretch to find that the "any product"

3  language used in section 3.01 was intended to exclude the Probes (the only products contemplated

4  by the Agreement), the Court again finds that the Agreement is sufficiently ambiguous that

5  resolution of the parties' dispute over the proper meaning of various provisions of the Agreement

6  would not be appropriate in the motion to dismiss context.  *See Columbia*, 940 S.W. 2d at 589.

7  Accordingly, Defendant's Motion is **DENIED** on this ground.

8              **3.        Alcon's Failure to Purchase Probes from MID Labs**

9       According to section 4.01 of the Agreement, "[n]othing in this Agreement shall be construed

10  to require Alcon to purchase any minimum quantities of Products from MID Labs."  (Comp., Ex. A

11  at § 4.01.)  Defendant contends that section 4.06 of the Agreement, as discussed above, reserved

12  Alcon's right to manufacture similar technology that could replace MID Labs' Probes.  However,

13  Plaintiff alleges that Alcon breached the Agreement by not purchasing the Probes it needed from

14  MID Labs pursuant to section 3.01 of the Agreement and that the purpose of section 4.01 was to

15  provide for the possibility that Alcon would get out of the probe business altogether and would not

16  need to purchase (or manufacture) any probes.  Plaintiff argues, however, that the Agreement is

17  clear that should Alcon require probes, it was required to purchase those probes from MID Labs.

18       In light of the three competing provisions and the parties' reasonable interpretations of each

19  (as well as their interpretations of the effect of all the provisions read in concert), the Court finds

20  that there is ambiguity in the Agreement regarding Defendant Alcon's purchase requirement.

21  *Columbia*, 940 S.W. 2d at 589.  As discussed above, this raises factual questions that cannot be

22  decided on a motion to dismiss.  Thus, the Court **DENIES** Defendant's Motion as to Plaintiff's

23  breach of contract claim for Defendant's failure to purchase its probes from MID Labs.

24                                          —

25       In sum, MID Labs' assertion that Alcon breached the contract by manufacturing high speed

26  Probes, by misappropriating confidential information, and by ceasing to purchase all of its needed

27  Probes from Mid Labs, raises questions of fact regarding the proper interpretation of the Agreement

28  that cannot be decided on a motion to dismiss.  Thus, the Court **DENIES** Defendant's motion to

1  dismiss as to Plaintiff's breach of contract claim.

2

3                                **CONCLUSION**

4         For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to

5  Plaintiff's First and Third Causes of Action without prejudice, and **DENIES** the motion as to

6  Plaintiff's Second Cause of Action for breach of contract.  To the extent that Plaintiff's Complaint is

7  dismissed, Plaintiff may file an amended complaint within 30 days within the date of this Order.

8

9         **IT IS SO ORDERED.**

10 Dated: August_10___, 2005

11                                         MARTIN J. JENKINS
                                           UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28